IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VINCENT "BRUCE" WATKINS** | : | |
| 2237A New Holland Pike | : | NO.: |
| Lancaster, PA 17601 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION – LAW |
| | : | |
| **YODER'S MEATS INC.**, *d/b/a* **YODER'S** | : | |
| **COUNTRY MARKET #121** | : | |
| 14 South Tower Road | : | |
| New Holland, PA 17557 | : | |
| | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |

## COMPLAINT

AND NOW comes Plaintiff, Vincent "Bruce" Watkins ("Plaintiff"), by and through his undersigned counsel, for his Complaint against the named defendant, alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action to redress violations by Defendant under Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. § 2000e, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981.

2. Specifically, Plaintiff contends that Defendants subjected him to a hostile work environment due to race, discriminated against him due to race and retaliated against him for making a good faith compliant of discrimination based on race and hostile work environment, which led to Plaintiff's termination.

3. As a result, Plaintiff has suffered damages as set forth herein.

## PARTIES

1

4.      Plaintiff, Vincent "Bruce" Watkins, is a citizen of the United States and Pennsylvania, where he currently maintains an address of 2237A New Holland Pike, Lancaster, Lancaster County, Pennsylvania.

5.      Defendant, Yoder's Meats Inc., doing business as Yoder's Country Market #121, is a domestic business corporation authorized to conduct business in the Commonwealth of Pennsylvania, with a principal place of business located at 14 South Tower Road, New Holland, Lancaster County, Pennsylvania.

## JURISDICTION AND VENUE

6.      Paragraphs 1 through 5 are hereby incorporated by reference as though the same were fully set forth at length herein.

7.      On or about February 14, 2025, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (c), and 43 P.S. § 959(a).

8.      Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2025-03912.

9.      Plaintiff's EEOC Charge was dual-filed within one hundred and eighty (180) days of the unlawful employment action.

10.     On or about September 4, 2025, Plaintiff requested the Notice of Right to Sue from the EEOC.

11.     By correspondence dated September 5, 2025, Plaintiff received a Notice of Right to Sue from the EEOC regarding his Charge, advising Plaintiff that he had ninety (90) days to file suit against Defendant.

12. Plaintiff filed the instant action within the statutory time frame applicable to his federal claims.

13. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintain this action.

14. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. § 2000e, et seq., the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq, and Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981.

15. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

16. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as his federal claims.

17. The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania in this judicial district.

**FACTUAL BACKGROUND**

18. Paragraphs 1 through 17 are hereby incorporated by reference as though the same were fully set forth at length herein.

19. By way of background, Plaintiff is an African American man.

20. Upon information and belief, Defendant employs several hundred employees on a consistent basis.

21. Upon information and belief, the entirety of Defendant's work force included less than ten (10) people of color.

22. Otherwise, it is believed and therefore averred that most of Defendant's employees are Caucasian.

23. By way of further background, Defendant operates a convenience store (Yoder's Country Market) in New Holland, Pennsylvania, that offers groceries, a pharmacy, a gas station, a flower shop, and a restaurant with event and banquet rooms.

24. Plaintiff worked in the restaurant and banquet area.

25. In or around October 2016, Defendant's former Restaurant Supervisor, Kathy Hanum ("Ms. Hanum") hired Plaintiff as a part-time dishwasher.

26. However, upon starting Plaintiff's employment, Plaintiff did not work as a part-time dishwasher.

27. Instead, on his first day Ms. Hanum told Plaintiff his responsibilities would be setting up and cleaning up banquets and parties and working in the kitchen helping with food preparation.

28. Such duties continued throughout Plaintiff's tenure with Defendant.

29. Throughout Plaintiff's time working for Defendant, he worked part-time, approximately ten (10) to fifteen (15) hours per week.

30. Plaintiff continuously asked Defendant to move to a full-time position, stating he had availability and would like to work more hours.

31. Tina Last Name Unknown ("LNU") ("Tina LNU") or Marsha LNU, Defendant's Supervisors, or Denise Yoder ("Ms. Denise Yoder"), daughter of Defendant's Owner, denied

Plaintiff's inquiries each time and stated that most employees were part-time and that full-time positions were not available.

32. Upon information and belief, this information was false.

33. It is believed and therefore averred that Plaintiff spoke with Tina LNU, Marsha LNU, or Ms. Denise Yoder on at least three (3) or four (4) occasions about the possibility of moving into a full-time position.

34. Plaintiff stopped asking about full-time opportunities in or around January or February 2023 because he believed he would never be offered the opportunity.

35. Upon information and belief, despite a stated "lack of opportunities" for full-time positions, Defendant hired employees for full-time work anyway.

36. It is believed and therefore averred that Plaintiff was denied the option to work as a full-time employee due to his race.

37. By way of further background, while working for Defendant, Plaintiff was in a relationship with another employee, Marianne Bavis ("Ms. Bavis").

38. Ms. Bavis is a white woman.

39. On approximately four (4) occasions in 2024, Defendant's Owner's wife, Darlene Yoder ("Ms. Darlene Yoder") asked Ms. Bavis if Plaintiff "beat" her.

40. Ms. Bavis then relayed this information to Plaintiff.

41. It is believed and therefore averred that Ms. Darlene Yoder asked Ms. Bavis this because Plaintiff is an African American man and Ms. Bavis is a white woman.

42. In or around Spring 2024, Plaintiff witnessed Defendant's employee, Ann LNU, who worked closely with Ms. Bavis, tell Missy LNU and Donna LNU, Defendant's Supervisors, words to the effect of "I am not doing that," and "that is not my job."

43. Plaintiff heard Ann LNU state this to Missy LNU and Donna LNU on several occasions.

44. Upon information and belief, Ann LNU was not disciplined for this behavior.

45. Around the same time, Plaintiff also witnessed Defendant's Short Order Cook, Sean LNU, who is also white, exhibit similar behavior and use the same words toward Missy LNU and Donna LNU.

46. Upon information and belief, Sean LNU was not disciplined for this behavior.

47. In or around April 2024, Plaintiff witnessed an unknown white male employee of Defendant in the back kitchen area tell Defendant's Supervisor, Christine LNU, "I don't like you," and "I am not doing that."

48. Upon information and belief, the unknown male employee was not disciplined and was instead given a shift whereby he did not have to work with Christine LNU.

49. On or about August 12, 2024, Sean LNU told Plaintiff that he named his rabbit after Plaintiff because the rabbit was black.

50. Plaintiff did not report this to Defendant due to the belief that Defendant would fail to take corrective action.

51. On or about August 26, 2024, Plaintiff arrived for a Monday morning shift.

52. When Plaintiff arrived at work, Missy LNU and Donna LNU told him that another employee, Brenda LNU, who often called out of work, was absent that day and that Plaintiff would be required to do Brenda LNU's job in addition to his own job.

53. Plaintiff voiced his displeasure over the situation to Missy LNU and Donna LNU and stated that what they were asking of him was not fair.

54. Missy LNU and Donna LNU continued to berate Plaintiff

6

55. One of them said "you do what I tell you or you punch out and go home," which Plaintiff interpreted as a threat to his job.

56. Missy LNU and Donna LNU did not speak to white employees in the same manner.

57. Missy LNU told Plaintiff, "you are a loud-mouthed Nigger anyway," and that if Plaintiff did not like it, he could take his concerns up with Human Resources ("HR").

58. At that point, Plaintiff was extremely offended and left Defendant's premises.

59. Plaintiff went home and called HR later that same day to report the slur.

60. Later that same day, Loyda Brendle ("Ms. Brendle"), Defendant's HR Coordinator, told Plaintiff over the phone that after an investigation, he was terminated.

61. It is believed and therefore averred that Plaintiff was terminated due to his race and in retaliation for his complaints of unfair treatment on the basis of race.

62. Several days later, Plaintiff received a termination letter from Ms. Brendle.

63. Defendant also sent Plaintiff an unsigned and threatening "No Trespass Letter."

64. Defendant also sent a copy to the New Holland Police Department.

65. The letter indicated that Plaintiff was not allowed on any of Defendant's properties and was not to contact Defendant for any reason or Defendant would press criminal charges against him.

66. It is believed and therefore averred that such threatening letters were sent on the basis of Plaintiff's race, and for his complaints of the same.

## COUNT I
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 29 U.S.C. § 2000e, *et seq.*
## HOSTILE WORK ENVIRONMENT - RACE

67. Paragraphs 1 through 66 are hereby incorporated by reference as though the same were fully set forth at length herein.

68. Defendant subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of race in violation of Title VII.

69. Defendant failed to take appropriate remedial action to address the hostile work environment created by race that Plaintiff endured and reported to Defendant in good faith.

70. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

71. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 29 U.S.C. § 2000e, et seq.
## RACE DISCRIMINATION AND RETALIATION

72. Paragraphs 1 through 71 are hereby incorporated by reference as though the same were fully set forth at length herein.

73. Defendant subjected Plaintiff to discrimination based on race in violation of Title VII.

74. Plaintiff made good faith complaints to Defendant about racial discrimination and harassment.

75. Defendant retaliated against Plaintiff because of his good faith complaints of racial discrimination and harassment by terminating Plaintiff upon reporting racial discrimination, harassment, or hostile work environment.

76. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

77. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

## COUNT III
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, et seq.
## HOSTILE WORK ENVIRONMENT - RACE

78. Paragraphs 1 through 77 are hereby incorporated by reference as though the same were fully set forth at length herein.

79. Defendant subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of race in violation of the PHRA.

80. Defendant failed to take appropriate remedial action to address the hostile work environment created by race that Plaintiff endured and reported to Defendant in good faith.

81. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

82. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

## COUNT IV
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, et seq.
## RACE DISCRIMINATION AND RETALIATION

83. Paragraphs 1 through 82 are hereby incorporated by reference as though the same were fully set forth at length herein.

84. Defendant subjected Plaintiff to discrimination based on race in violation of the PHRA.

85. Plaintiff made good faith complaints to Defendant about racial discrimination and harassment.

86. Defendant retaliated against Plaintiff because of his good faith complaints of racial discrimination and harassment by terminating Plaintiff upon reporting racial discrimination, harassment, or hostile work environment.

87. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

88. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

## COUNT V
## SECTION 1981 OF THE CIVIL RIGHTS ACT
## 42 U.S.C. §1981
## RACE DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND RETALIATION

89. Paragraphs 1 through 88 are hereby incorporated by reference as though the same were fully set forth at length herein.

90. Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." *See* 42 U.S.C. § 1981(a).

91. Section 1981 claims can be brought in the employment context and are subject to the same analysis as Title VII racial discrimination claims. *Castleberry v. STI Grp.*, 863 F.3d 259 (3d Cir. 2017).

92. Defendant subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of race in violation of the PHRA.

93. Defendant failed to take appropriate remedial action to address the hostile work environment created by race that Plaintiff endured and reported to Defendant in good faith.

94. Plaintiff made good faith complaints to Defendant about racial discrimination and harassment.

95. Defendant retaliated against Plaintiff because of his good faith complaints of racial discrimination and harassment by refusing to offer Plaintiff full-time employment opportunities and by terminating Plaintiff upon reporting racial discrimination, harassment, or hostile work environment.

96. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

97. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial, but no less than One Hundred and Fifty Thousand Dollars ($150,000);

B. Punitive damages in an amount to be determined at trial and sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

  C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

  D. Pre-judgment interest in an appropriate amount;

  E. Such other and further relief as is just and equitable under the circumstances; and

  F. Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MARZZACCO NIVEN & ASSOCIATES**

By: */s/ Faith Pensinger*
  Faith Pensinger, Esq.
  945 East Park Drive, Suite 103
  Harrisburg, PA 17111
  TEL: 717-231-1640
  FAX: 717-231-1650
  fpensinger@klnivenlaw.com
  *Attorney for Plaintiff*

Dated: December 2, 2025

## **DEMAND TO PRESERVE EVIDENCE**

Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and his claims to damages, to any defenses to same, including but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, emails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.